IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HERMENEGILDA MARTINEZ,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Civil No. 10-1580 (CVR)

**OPINION AND ORDER**

Plaintiff Hermenegilda Martínez (hereafter "plaintiff Martínez") filed this complaint to obtain judicial review of the decision of the Commissioner of Social Security (hereafter "the Commissioner") denying her application for a period of disability and ensuing benefits. (Docket No. 4). Plaintiff Martínez requests from this Court that the final decision of the Commissioner be reversed and an order awarding disability benefits be entered on grounds the decision of the Commissioner was issued under improper legal standards and is not supported under the substantial evidence rule. (Docket Nos. 17).[1]

The Commissioner answered the complaint and filed copy of the administrative transcript and record. (Docket Nos. 13 and 14). Plaintiff Martínez then filed the memorandum of law on October 9, 2011. (Docket No. 17). Thereafter, defendant filed its memorandum of law. (Docket No. 18).

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

Hermenegilda Martínez  v. Commissioner of SS
Civil No. 10-1580 (CVR)
Opinion and Order
Page No. 2

Plaintiff Martínez has consented to the exercise of jurisdiction by a United States Magistrate Judge for which the following opinion and order is issued after having considered the parties' corresponding briefs, as well as the administrative record containing the medical evidence on file. (Docket Nos. 8 and 9).

## BACKGROUND

On June 5, 2007, plaintiff Martínez filed an application for disability insurance benefits which was denied initially and thereafter reached the hearing level on December 10, 2007. The presiding Administrative Law Judge (hereafter "ALJ") determined plaintiff was not under disability. On April 16, 2010, the Appeals Counsel denied a request for review for which this became the final decision of the Commissioner, from which plaintiff Martínez is now seeking judicial review.

Plaintiff Martínez claims she was unable to work as of July 18, 2002, due to high blood pressure, cardiac arrhythmia, stomach ulcers, gastritis, muscoloskeletal pain, joint pain, migraines, thyroid disorder and a mental condition. She was then forty-seven years old, had a sixth grade education and her past relevant work experience was as a machine operator. Her insured status expired on June 30, 2007, for which she must establish being disabled by such date.

## PROCEDURAL HISTORY AND THE ADMINISTRATIVE HEARING

The ALJ's opinion of April 25, 2008 discussed plaintiff's condition through the evaluation process mandated by law, insofar as concluding that plaintiff: (1) meets the non-disability requirements for a period of disability and disability insurance benefits and was

insured for benefits up to June 30, 2007; (2) has not engaged in substantial gainful activity since the alleged onset date of disability, that is, July 18, 2002; (3) has an impairment or a combination of impairments considered "severe" based upon the Regulations found at 20 C.F.R. § 404.1520(b), but these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. At the remaining step evaluation required for this sequential analysis, plaintiff's impairments must have been considered severe because the ALJ found the ability to perform all or substantially all of the requirements of medium level of work was impeded by additional limitations, for which although severe, the impairments were not of the intensity or severity alleged to be totally disabling. (Docket No. 13, Trans., p. 24 ). Still, the ALJ concluded plaintiff Martínez was able to perform work at the medium level of exertion. Through the testimony of a vocational expert the exertional level would also encompass jobs such as laundry worker, hand washer and folder in the laundry industry, which were light in the level of exertion.

The ALJ indicated having examined the entire record and considered subjective complaints finding the treatment received was conservative, without muscle atrophy or neurological compromise. Plaintiff's capacity to sit, stand, walk and use of arms, hands and lower extremities was determined not significantly restricted. (Id.).

In regards to the mental impairment, claimed as a severe depression, the ALJ discussed the treating psychiatrist's report of Dr. Angel Loyola Pérez of having evaluated plaintiff Martínez for the first time on March 16, 2005, but indicated the first sign of illness

having occurred in the year 2002. On September 29, 2005, Dr. Antonio Llona-Sánchez, a psychiatrist, also evaluated plaintiff. Both psychiatrists diagnosed a severe depression, with diminished attention span, poor capacity for concentration, some memory problems and average psychomotor activity. However, the ALJ found plaintiff Martínez was described as alert, at times maintaining visual contact, and responding to questions in a relevant manner. (Id. p. 19).

The ALJ concluded that, regardless of the opinion of Dr. Loyola-Pérez as to plaintiff having marked and extreme limitations in all areas of work-related activities, this was an issue reserved for the Commissioner and was not persuaded by such medical opinion. Although the ALJ accepted Dr. Loyola-Pérez treated and evaluated plaintiff for a long time period, by examining the record longitudinally, the ALJ stated plaintiff was the informant, as she was in the administrative hearing. Plaintiff's demeanor and manner of providing information and answering questions undermined, according to the ALJ, her allegations of forgetfulness. Although the adaptive disorder was considered severe, the ALJ indicated it could not be considered of the intensity or totally disabling nature as expressed by Dr. Loyola-Pérez. (Id. p. 20). Finding no significant mental condition and no exertional limitations which would preclude medium type of work, the ALJ determined --through the vocational expert's testimony-- the existence of jobs plaintiff Martínez could perform and as such concluded she was not under disability.

This Magistrate Judge examines herein if the evidence in the record as a whole provides substantial evidence in support of the ALJ's opinion finding no significant

limitations imposed for which disability finding would result and which was adopted as the final decision of the Commissioner to deny plaintiff's application for disability.

## LEGAL ANALYSIS

**A. Applicable Legal Standard**.

The Court's review in this action is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence as affirmed by the Appeals Council. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, Title 42, United States Code, Section 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *See* Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he/she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if [s]he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Title 42, United States Code, Section 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her

previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work.  Title 42, United States Code, Section  423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. § 404.1520(a).  A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R.  §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant  is engaged in "substantial gainful activity."  If he/she is, disability benefits are denied. §§ 404.1520(b). If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520©.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d);  20 C.F.R. pt. 404, subpt. P, App. 1.  If the

impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).

In regards to plaintiff Martínez, the ALJ found she meets the insured status requirements through June 30, 2007; has not engaged in substantial gainful activity since the alleged onset date of disability of July 18, 2002, and on the date last insured had the following severe impairments: osteoarthritis of the cervico-lumbar spine, left foot osteoarthritic changes with heel spurs and an affective disorder. (Trans., p. 18).

The ALJ additionally considered the allegations of plaintiff because of severe depression, anxiety, poor concentration and poor self-esteem, together with cervical radiculopathy, muscle spasms, cervical, back and joint pain, spurs, arrhythmia, high blood

pressure, high cholesterol, poor circulation, migraine headaches, thyroid condition, ulcers with stomach pain and gastritis. The ALJ concluded high blood pressure, high cholesterol and thyroid condition remained stable upon treatment, were under control and were fully amenable to treatment. (Id. p. 18).

According to the ALJ's opinion, the medical evidence of an internist revealed mild paralumbar muscle spasm and X-rays were compatible with mild osteoarthritis and muscle spasms. An electrocardiogram showed mild sinus tachycardia. Gait was normal, as were deep tendon reflexes and hand function, without motor or sensory deficits. Dr. María de Lourdes Telmont expressed an opinion of the patient having mild limitations for lifting and carrying, no limitation for sitting, standing, walking, hearing or speaking. (Id., p. 20). The monitoring, lab tests and treatment due to high blood pressure, hypothyroidism, body and ankle pain, were compatible with osteoarthritis and heel spurs, with result at times out of the ranges of normal, but which resulted in conservative monitoring and follow-up care, having acceptable responses to treatment. (Id.).

Considering the mental impairment, the ALJ concluded it did not meet or equal the criteria for a significant mental condition since it did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, for which the mental condition was not considered severe to prevent plaintiff Martínez from working. Thus, at step 4, the ALJ determined plaintiff Martínez retained the capacity for medium work. (Id. p. 22). The ALJ further considered plaintiff Martínez retained the ability for understanding and remembering, carrying out simple job instructions, adapting to changes

in routine work conditions, appropriately relating to co-workers and supervisors, maintaining adequate attention and concentration for at least two-hour spans, while complying attendance requirements and production quotas in a competitive work environment. (Id.).

On December 10, 2007, plaintiff Martínez testified at the administrative hearing represented by counsel Melba Rivera. The vocational expert Mr. Serrano Vega also testified. Plaintiff Martínez indicated she previously worked for over twenty years as a sewing factory operator, which also required lifting daily packets of some 25-30 pounds. She would use her hands and operate foot pedals continuously and was required to complete the tasks assigned. (Id. pp. 384-389). Plaintiff Martínez stopped working for becoming nervous and crying upon being unable to complete the tasks, suffering from monthly headaches attributed to high blood pressure and because of neck and back problems. (Id. pp. 389-390).

Plaintiff Martínez received treatment twice a month with Dr. Acosta for her pain and inflammation. She felt dizzy and suffered tightness in her chest, pain in the neck and in her heels. (Id. p. 392). Since plaintiff had no medical plan after she stopped working, plaintiff Martínez received medical treatment through her primary care doctor for her migraine, pain on her foot, low back pain for being seated for long periods of time and for standing for over 1 or 1 ½ hours. Plaintiff's daughter thereafter took her for psychiatric treatment with Dr. Loyola in 2005. (Id. p. 407).

Hermenegilda Martínez  v. Commissioner of SS
Civil No. 10-1580 (CVR)
Opinion and Order
Page No. 10

      Plaintiff Martínez further indicated she remained at her home most of the time, did not attend religious activities nor visited family members nor went grocery shopping. She mostly received needed attention and care from her daughter, who assisted her with any necessary lifting or bending. Plaintiff Martínez indicated she cries most of the time, has memory problems and requires assistance in taking her medications. At the present time, plaintiff visits a psychiatrist once a month and receives medications. (Id. pp. 397-404).

      The vocational expert's testimony made findings basically from the ALJ's submission as to an individual with residual functional capacity for medium level of exertion, with climbing and bending occasionally, excluding the work she previously performed because of the skilled components. (Id., p. 411). However, the vocational expert indicated there were other jobs within the residual functional capacity offered which exist in significant numbers such as laundry worker, which entails light activity, not requiring to climb or bend, with simple, not complex instructions to follow. Other available jobs were as a folder in the same industry and handle washer. (Id.). On the hypothetical question that the same individual would not be able to climb, bend, kneel or crawl, could not operate machinery controls with the legs or follow simple instructions, the vocational expert indicated this person would have significant limitations which did not allow to get involved on a sustained basis in a work activity and the lack of concentration would not allow performance of simple activity. (Id. pp. 412-413).

The ALJ did not give full evidentiary value to the medical opinions of plaintiff's treating sources indicating these were not controlling nor of special significance because they were to be examined along with the rest of the evidence in the case record. (Id. p. 20).[2]

While it is proper to discount evaluation of a physician who relies excessively on the patient's subjective symptoms, rather than on objective medical findings, clinical findings not confirmed by laboratory results on the grounds of being subjective should not be easily disposed. *See* Rodríguez Pagan v. Secretary of Health & Human Serv., 819 F.2d 1, 3 (1st Cir. 1987). Controlling weight is granted to an opinion when the ALJ finds said opinion is from a treating source, is a medical opinion concerning the nature and severity of plaintiff's impairment, and is well-supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. §404.1527(d). The ALJ may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record. Shaw v. Secretary of Health & Human Servs., 25 F.3d 1037 (1st Cir. 1994); Rodríguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

**B. Conclusions of Law**.

A review of the ALJ's decision shows he opined the objective evidence established the presence of medical impairments which could reasonably be expected to cause the symptoms alleged, but not to the extent claimed. In reviewing the decision of the ALJ, this Magistrate Judge still considers the Court of Appeals for the First Circuit has previously discussed the ALJ is "not required to recite every piece of evidence that favored appellant."

---

[2] The ALJ is also entitled to consider how the claimant's testimony fits with the rest of the evidence of record. *See* Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise)). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An ALJ is not required to give greater weight to opinions of treating physicians in social security disability case, if there is controversy in the medical evidence of record. *See* Arroyo v. Secretary of Health and Human Services, 932 F.2d 82 (1st Cir. 1991). *See also* Rodríguez Pagán v. Secretary of Health and Human Services, 819 F.2d at 1 (1st Cir 1987) (opinions of physicians in social security disability proceeding are not entitled to greater weight merely because they are treating physicians, as opposed to consulting physician). To be controlling, among other things, the treating physician's opinion must not be inconsistent with the other substantial evidence in the case record. Conflicts in the evidence are for the Commissioner, not the courts.  Rodríguez v. Secretary of Health and Human Services, 647 F.2d at 222. *See also* 20 C.F.R. § 404.1527(d)(2); *see also* Rodríguez Pagán v. Secretary of Health and Human Services, 819 F.2d at  3; Lizotte v. Secretary of Health and Human Services, 654 F.2d 127, 130 (1st Cir. 1981).

However, it is also well established that the treating physician's opinions must be given considerable weight in determining disability, even if not deemed conclusive. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994). Thus, the ALJ may disregard the treating physician's opinion with a showing of good cause. Moreover, "the good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id*. (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)). *See* Sánchez v. Commissioner of Social Security, 270 F.Supp.2d 218, 221 (D. Puerto Rico 2003).

A perusal of the available record shows a general practitioner, Dr. Luz M. López, treated plaintiff Martínez for high blood pressure and hyperthyroidism on a monthly basis since August 17, 2004. By February 2005, there were also complaints of pain in her feet, displaying edema. There is a medical note as to the presence of an emotional disorder due to family problems. In March 2005, plaintiff complained of feeling a current running down her right leg and was completely disoriented. By July of 2005, she had left ankle and elbow pain and was prescribed pain medication. Plaintiff had pain in the cervical region through her shoulders and spasms. By February 14, 2006, she was diagnosed with calcaneal spurs. Plaintiff was unable to sleep well and was very depressed, complaining also of headaches and body pain. By June of 2006, plaintiff also complained of chest pains and aches and was treated for her spurs, blurry vision, thyroid disease, cervical pains and a fybroma. (Trans. pp. 222-229, 349-368).

On March 16, 2005, plaintiff Martínez initiated psychiatric treatment with Dr. Angel Loyola Pérez who rendered three psychiatric reports, a medical certificate and progress notes of treatment through the year 2007 when the insured status was present and continued treatment thereafter.  Since the onset, plaintiff  is reported with persistent feelings of sadness, crying spells, fear, insecurity, loss of interest and motivation, anguish, anxiety, psychomotor retardation, loss of energy, irritability, poor tolerance and concentration and control of impulses.  Plaintiff had frequent episodes of mental blocks and disorientation, ideas of reference, confusion, multiple somatic complaints which did not improve with medical treatment.  Plaintiff was also depicted with recurrent suicide ideation, hopelessness, low self esteem, feelings of worthlessness, emptiness and solitude, with auditory hallucinations and sexual dysfunction.  (Id., pp. 203, 268 and 334).  Plaintiff had frequent discussions with family and friends, was easily irritated and hostile, attended appointments accompanied and was observed carelessly and casually dressed, without make-up, unkept and not caring about her appearance, with facial expression of worry and sadness, low tone of voice and looking older than her stated age.  She had frequent crying episodes and, two years after the first appointment, she continued being assessed as having a very fragile emotional state.  (Id. pp. 202-204, 269 and 335).

The mental examination presents a patient with severe emotional instability complicated with psychotic features and a sustained and progressive deterioration of her cognitive faculty. (Id. p. 268).  She was oriented as to person and place and disoriented as to time.  Remote memory was moderately affected and attention span was diminished,

being easily distracted. (Id. pp. 205, 270 and 337). The doctor did not expect significant improvement as the patient had demonstrated a marked tendency towards chronicity. (Id. pp. 253, 271 and 338). Plaintiff was under psychotherapy and pharmacotherapy with Seroquel 25 mg., Effexor 75 mg., Klonopin .5mg., Zoloft 100 mg., medications which had been changed throughout treatment with dosage adjustments. The diagnosis was of major depression, recurrent, with psychosis. (Id., pp. 198-199, 254-255, 270-272, and 339).

Dr. Loyola Pérez' statement of July 11, 2007, indicated the patient was markedly limited in her ability to understand and remember short, simple instructions, carry out same, make judgments on simple work-related decisions, respond appropriately to work pressures in usual work setting and respond appropriately to changes in a routine work setting. (Id. pp. 262-264).

On September 29, 2005, Dr. Antonio Llona Sánchez submitted a psychiatric consultative evaluation upon the Commissioner's request. Summarily, it refers to a patient who appeared accompanied by her daughter, dressed simple, not wearing any jewelry or accessories, who concentrated on her multiple body pains. The production of thought was scarce, although logical, flow of thought was slow, without blocks being appreciated. Plaintiff felt useless with low self-esteem and was involved in dysphoric sadness. She was not oriented as to time. Remote memory was marginal, recent was affected. Attention span seems diminished and ability to concentrate was poor. The fund of general knowledge was beneath that expected. Plaintiff was unable to interpret proverbs, could not do arithmetic questions. The diagnosis was of depressive disorder. (Id. pp. 325-326).

On October 10, 2005, another consultative evaluation by an internist, Dr. María de Lourdes Telmont, was performed. There were numerous complaints of pain, headaches, depression, anxiety, and panic episodes. Upon medical examination, there was pain in the lower back and both knees and ankles with mild paralumbar muscle spasm with marked limitation in the rotation of movement. Dr. Telmont opined there was mild limitation in lifting and carrying and mild sinus tachycardia, mild osteoarthritis with paravertebral muscle spasms. The diagnosis was of severe mental depression with psychotic tendencies, arterial hypertension, paralumbar muscle spasms with marked limitation in the range of movement, hypercholesterolemia, hypothyroidism and migraines. (Id. pp. 312, 314, 318, 322, and 325-326).

Evidently, both the treating sources, Dr. López and psychiatrist Dr. Loyola Pérez and the consultative evaluations of psychiatrist Dr. Llona Sánchez and internist Dr. Telmont, notes and findings are in agreement that plaintiff Martínez had a severe mental condition, which is sustained through consistent and frequent treatment and prescribed medications. The ALJ's determination to disregard the severe condition by reference to one telephone interview of plaintiff Martínez by an administrative employee[3] and the assessment as to the limited administrative testimony,[4] is not supported by substantial evidence in the record as a whole.

---

[3] Defendant's memorandum refers to the SSA employee, A. Ríos, who interviewed plaintiff Martínez over the telephone and recorded the observations as to plaintiff. (Trans., pp. 20 and 78).

[4] The ALJ referred to his observation of plaintiff's testimony who, although unable to recall certain matters, generally answered questions appropriately. (Trans., pp. 20 and 384-09).

The Commissioner's memorandum argues there is a part of the record which supports the residual functional assessment upon which the ALJ may have relied for his conclusion that plaintiff could perform medium type of work.  *See* Gordils v. Secretary of Health and Human Services, 921 F.2d 327, 329 (1st Cir.1990) (*per curiam*) (the opinion of an examining consultant and a non-examining physician who completed an RFC assessment can constitute "substantial evidence").  The ALJ referred to non-examining medical consultants, Dr. Rafucci and Dr. Piñero, as substantial evidence in support of his decision.  He also refers to Dr. Francine Rodríguez de la Obra who, upon examination of the medical record, concluded that plaintiff Martínez could lift up to fifty pounds, stand and/or walk for six hours, sit for equal time, push and pull without limitations, and could occasionally climb and stoop. (Trans. pp. 304-310).

Nevertheless, the ALJ's opinion considered plaintiff could perform medium work which would not have precluded the performance of her past relevant job as a sewing machine operator, but which was considered further limited because of the required skills.  The existence of jobs within the limitations imposed by the combination of exertional and non-exertional limitations were addressed by submitting hypothetical questions to the vocational expert.  Within such level of exertion, although the vocational expert testified as to light kind of jobs that existed, plaintiff's mental standpoint was submitted in the first hypothetical questions presented by the ALJ as of an individual retaining the ability to understand, remember and carry out simple instructions, maintain attention and concentration, interact and relate appropriately with others, such as co-workers,

supervisors and the public, and respond appropriately to changes in work setting and environment. Nevertheless, the second hypothetical question, which was consonant with the medical evidence in the record as a whole, referred to an individual, such as plaintiff Martínez, who could not climb, bend, kneel or crawl, could not operate controls with her legs, nor could follow simple instructions because of her poor concentration and memory. (Id. p. 412). With the presence of these limitations, the vocational expert clearly indicated the person was considered not able to be involved on a sustained basis in work activity. (Id. p. 413).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[5] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). *See* Rodríguez v. Secretary of Health and Human Servs., 647 at 222.

As a lay person, however, the ALJ is not qualified to interpret raw medical data in functional terms and when there is no medical opinion supported said determination. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15 (1st Cir.1996); Pérez

---

[5] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

Hermenegilda Martínez  v. Commissioner of SS
Civil No. 10-1580 (CVR)
Opinion and Order
Page No. 19

v. Secretary of Health and Human Services, 958 F.2d 445, 446 (1st Cir.1991); Berrios López v. Secretary of Health and Human Services, 951 F.2d 427 (1st Cir.1991); Gordils v. Secretary of Health and Human Services, 921 F.2d at 329; see Nguyen v. Chater, 172 F.3d at 35. With a few exceptions, an ALJ, as a lay person, is not qualified to interpret raw data in a medical record. *See also* Pérez v. Secretary of Health & Human Servs., 958 F.2d at 446; Gordils v. Secretary of Health & Human Servs., 921 F.2d at 329. Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment. *See, e.g., id.*

The question whether substantial evidence supports the ALJ's finding that plaintiff retained the functional capacity to do all levels of medium type exertion, has been considered to allow performance of light and unskilled work that existed in significant numbers in the national economy and as testified by the vocational expert.  If such evidence would have suggested a relatively mild physical impairment posing, to the layperson's eye no significant exertional restrictions, then we should uphold the ALJ's finding.  Such is not the situation in the instant case both as to the combination of exertional and non-exertional impairments which are sustained by treating and consultative sources who examined plaintiff, the progress notes and the treatment afforded during a significant time span. [6] Medical opinions from treating sources, and in the instant case, consultative physicians, one

---

[6] The ALJ favored the opinions of non-examining medical consultants made from their interpretation of the records and who reached different conclusions than treating and consultative doctors who had examined plaintiff Martínez.  Thus, the ALJ rejected the opinions of treating sources, as well as its own consultants although these were supported and consistent with the  medical examinations, record, treatment history, and medications prescribed.

who is a psychiatrist and another an internist, who examined plaintiff Martínez on behalf of the Commissioner, are entitled to special significance and may be entitled to controlling weight, more so when well-supported by acceptable clinical and laboratory diagnostics techniques and not inconsistent with other substantial evidence in the case record.  20 C.F.R. §404.1527(d)(2). The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. *See* Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); 20 C.F.R. §§404.1527 (d)(1), (2) and 416.927(d)(1) (2).

Thus, this Magistrate Judge considers the decision of the Commissioner is not supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons stated above, this Magistrate Judge, having scrutinized the record and the evidence therein as a whole, finds the decision of the ALJ is not supported by substantial evidence.  Therefore, the decision of the Commissioner of Social Security, denying the application for disability, is VACATED.

Judgment to te entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of November of 2011.

                                          s/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ-RIVE
                                          UNITED STATES MAGISTRATE JUDGE